IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Rider Bustamante Cabrera,<br><br>Petitioner,<br><br>v.<br><br>Kevin Raycraft, in his official capacity as Field Office Director of Enforcement and Removal Operations, Detroit Field Office, Immigration and Customs Enforcement, *et al.*,<br><br>Respondents. | : | Case No. 1:26-cv-902<br><br>Judge Susan J. Dlott<br><br>Order Granting Habeas Petition |

Petitioner Rider Bustamante Cabrera brings this Petition for a Writ of Habeas Corpus ("Habeas Petition") under 28 U.S.C. § 2241. (Docs. 1, 13.)[1] Bustamante Cabrera, a citizen and national of Peru, has been detained since December 15, 2025 while in removal proceedings. He argues that he is being unlawfully held and denied a constitutionally-adequate custody redetermination hearing—a bond hearing—in violation of the Due Process Clause of the United States Constitution. Federal Respondents filed a Return of Writ opposing Bustamante Cabrera's right to a bond hearing, to which Bustamante Cabrera filed a Reply. (Docs. 16, 17.)[2] Respondent Butler County Sheriff, on the other hand, filed a Motion to Dismiss. (Doc. 15.) The Court will **GRANT** the Habeas Petition because Bustamante Cabrera, who was detained after entering the United States, released and paroled, and then re-detained almost three years later, is entitled to a bond hearing under 8 U.S.C. § 1226(a) and the Due Process Clause.

---

[1] Bustamante Cabrera re-filed the Habeas Petition at the request of the Clerk of Court because the initial copy was not text searchable. (Doc. 11.) The Court will cite to the text searchable copy filed at Doc. 13.

[2] Federal Respondents are the Field Office Director of Enforcement and Removal Operations, Detroit Field Office, Immigration and Customs Enforcement; the Secretary of the U.S. Department of Homeland Security; the Acting Director of U.S. Immigration and Customs Enforcement; and the Attorney General of the United States.

## I. BACKGROUND

### A. Immigration Proceedings

Bustamante Cabrera was born in 1991 in Peru. (Doc. 13 at PageID 119; Doc. 13-2 at PageID 128.) He applied for asylum into the United States at a port of entry in Texas on December 31, 2022. (Doc. 13 at PageID 115; Doc. 13-3 at PageID 129.) He was designated as "an arriving alien" and charged with being subject to removal under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an immigrant not in possession of a valid entry document. (Doc. 13-3 at PageID 129, 192.) The Immigration Judge sustained the charge of inadmissibility. (Doc. 13-8 at PageID 152.) Bustamante Cabrera was not detained at that time, but rather he was paroled into the United States for one year with instructions to report to immigration officials in Cleveland, Ohio on October 31, 2023 for removal proceedings under INA § 240, 8 U.S.C. § 1229a. (Doc. 13-3 at PageID 129; Doc. 16-1 at PageID 227.) His parole ended on December 31, 2023. (Doc. 16-2 at PageID 229.)

Bustamante Cabrera attended six hearings at the Cleveland Immigration Court between 2023 and 2025. (Doc. 13 at PageID 120; Doc. 13-4 at PageID 133–144.) He submitted a change of address form when he moved residences. (Doc. 13-5 at PageID 145.)

On November 25, 2025, the Department of Homeland Security ("DHS") moved to pretermit Bustamante Cabrera's application for asylum by removing him to a third country, Honduras, where DHS asserted that his life and freedom would not be threatened. (Doc. 13-7 at PageID 147–150; Doc. 16-3 at PageID 230.) ICE officers detained Bustamante Cabrera on or around December 19, 2025. (Doc. 13 at PageID 120; Doc. 13-7 at 147–150.) The Immigration Judge granted DHS's motion to pretermit on February 6, 2026. (Doc. 13-6 at PageID 147.) Bustamante Cabrera asserts that Federal Respondents attempted to remove him to Honduras, but

that he was rejected admission by Honduras, and he returned to Ohio. (Doc. 13 at PageID 120; Doc. 13-10 at PageID 167.)

On July 27, 2026, DHS moved to re-open Bustamante Cabrera's removal proceedings with a request to remove him to Peru. (Doc. 13 at PageID 120; Doc. 13-8 at PageID 151–153.) This had the effect of re-opening Bustamante Cabrera's application for asylum as well. (Doc. 13 at PageID 120; Doc. 13-8 at PageID 152.) An Immigration Judge granted the motion to reopen on August 4, 2026. (Doc. 16-5 at PageID 234–235.)

Bustamante Cabrera moved for a bond, or custody redetermination hearing, in Immigration Court on August 18, 2026. (Doc. 13 at PageID 121; Doc. 13-10.) He submitted exhibits in support, including proof of employment, proof of residency, and letters of support. (Doc. 13-10 at PageID 173–205.) Immigration Judge Richard Drucker denied him bond on August 27, 2026 stating only: "No jurisdiction." (Doc. 13-11 at PageID 206.)

**B. Procedural Posture**

Bustamante Cabrera filed his Habeas Petition in this Court on September 4, 2026. (Docs. 1, 13.) Bustamante Cabrera alleges that his detention is unlawful and that he is entitled to release or a custody redetermination hearing—a bond hearing—under the Due Process Clause of the Fifth Amendment.[3] (*Id.* at PageID 122–124.) Federal Respondents oppose the Habeas Petition and contend that Bustamante Cabrera is subject to mandatory detention under the INA, 8 U.S.C. § 1225(b)(2)(A), as an arriving alien and an applicant for admission seeking admission to the United States at a port of entry. (Doc. 17.) The Butler County Sheriff seeks dismissal. (Doc. 15.)

[3] Bustamante Cabrera also contends that Federal Respondents had no legitimate non-punitive reason to revoke his suspension. (Doc. 13 at PageID 122.) The Court finds it unnecessary to address that claim separately.

## II. LAW AND ANALYSIS

### A. Mandatory Detention under the INA

Federal Respondents in this case argue that a non-citizen who is detained at the border, but then paroled and released under 8 U.S.C. § 1182(d)(5), is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) at the conclusion of his parole. (Doc. 16 at PageID 219.) The Sixth Circuit has explained generally when mandatory detention under § 1225 applies:

> Under 8 U.S.C. § 1225, a noncitizen "present in the United States who has not been admitted or who arrives in the United States ... shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). Section 1225(b)(2)(A) provides in part that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under [§ 1229a]." *Id.* § 1225(b)(2)(A). "The plain meaning of [§ 1225(b)(2)(A)] is that detention must continue ... until removal proceedings have concluded." *Jennings [v. Rodriguez]*, 583 U.S. [281,] 299, 138 S.Ct. 830 [(2018)]. Noncitizens who fall under § 1225(b)(2)(A)'s ambit must be detained, subject to very narrow exceptions inapplicable to this appeal. *See* 8 U.S.C. § 1225(b)(2)(B).

*Lopez-Campos v. Raycraft*, 175 F.4th 713, 721 (6th Cir. 2026) (emphasis added), *petition for cert. docketed*, *Raycraft v. Lopez-Campos*, No. 25-1415 (U.S. June 24, 2026).

An exception to mandatory detention allows DHS to parole certain detainees for "urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). Such parole "shall not be regarded as an admission of the alien" and "thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* Federal Respondents contend that under this provision, Bustamante Cabrera's status reverted to that of an arriving alien seeking admission under § 1225(b)(2)(A) at the conclusion of his parole.

The Court disagrees. The Court is persuaded that Bustamante Cabrera's detention is governed by 8 U.S.C. § 1226(a)—not § 1225(b)(2)(A)—and that he is entitled to a bond hearing.

Section 1226(a) provides that "an alien *may be* arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

The Court rejects Federal Respondents' contention that DHS has authority to detain Bustamante Cabrera for the duration of his removal proceedings without a bond hearing under § 1225(b)(2)(A) even after releasing him on parole. Section 1225(b)(2)(A) requires mandatory detention for aliens who both are "applicants for admission" and "seeking admission." The terms "applicant for admission" and "seeking admission" do not have the same meaning. *Lopez-Campos*, 175 F.4th at 723. To be seeking admission, "the noncitizen must actively be in search of *lawful entry into the United States* via inspection and authorization by an immigration officer." *Id.* (emphasis added); *see also Methelus v. Mullin*, No. CV 26-158-DLB, 2026 WL 1505792, at *5 (E.D. Ky. May 29, 2026) ("This Court and numerous other district courts have found that the expiration of parole does not return the undocumented immigrant to the status of an 'arriving alien' at the threshold of the United States.")

A noncitizen who has been paroled into the country and who lived in Ohio for three years is not seeking admission—not seeking lawful *entry* into the country—as required by § 1225(b)(2)(A). *See Munoz Soto v. Raycraft*, 834 F.Supp.3d 767, 771 (S.D. Ohio 2026) ("Because Petitioner was inspected at the border and paroled into the interior of the country, he cannot now be an "arriving alien" who is "seeking admission," such that he must be subjected to mandatory detention under Respondents' interpretation of § 1225(b).''); *Araque-Marquez v. Olson*, No. CV 26-84-DLB, 2026 WL 836121, at *6 (E.D. Ky. Mar. 26, 2026) (stating that an

alien cannot seek lawful entry when he already is in the country and that seeking lawful status is not the same as seeking lawful admission); *Quintero v. Olson*, No. 4:26-CV-34-DJH, 2026 WL 596643, at *2–3 (W.D. Ky. Mar. 3, 2026) (holding that an alien whose parole has expired is neither an "arriving alien" nor an alien "seeking admission"). Rather, § 1226(a) applies to aliens already present in the United States, including parolees like Bustamante Cabrera. *See Mulet-Zaldivar v. Acting Dir. of Enf't & Removal Operations, Detroit Field Off., Immigr. & Customs Enf't*, No. 1:26-CV-00143, — F.Supp.3d —, 2026 WL 1911462, at *1 (S.D. Ohio July 2, 2026); *Araque-Marquez*, 2026 WL 836121, at *9; *Quintero*, 2026 WL 596643, at *2–3. Bustamonte Cabrera, therefore, is entitled to a bond hearing under § 1226(a).

The regulation relied upon by Federal Respondents, 8 C.F.R. § 1.2, does not change that result. That regulation states in relevant part that "[a]rriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, [and] . . . [a]n arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked." 8 C.F.R. § 1.2; *see also* 8 C.F.R. § 1001.1(q) (substantially the same). "Courts must exercise their independent judgment" when interpreting statutes and should not blindly defer to agency interpretation. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–413 (2024). The parole statute provides that upon completion of parole, the immigrant's "case shall continue to be dealt with *in the same manner as that of any other applicant for admission to the United States*." 8 U.S.C. § 1182(d)(5)(A) (emphasis added). Treating the noncitizen as an applicant for admission to the United States does not require treating him as an arriving alien seeking entry into the United States at a port of entry under § 1225(b)(2)(A). This Court agrees with other district courts in the Sixth Circuit and elsewhere that have declined to interpret or apply 8 C.F.R. § 1.2 as requiring a paroled alien to be treated as

an arriving alien subject to mandatory detention under § 1225. *See*, *e.g.*, *Ontiveros v. Warden Corr. Ctr. of Nw. Ohio*, No. 3:26-CV-632, 2026 WL 1109422, at *5 (N.D. Ohio Apr. 24, 2026) ("[T]he Court rejects the government's argument that an arriving immigrant who is paroled and whose parole expires remains an arriving immigrant even when that term no longer logically applies to them."); *Montiel v. Raycraft*, No. 1:25-CV-1610, 2026 WL 32076, at *3 (W.D. Mich. Jan. 6, 2026) (holding that an alien who arrived in 2023, was paroled, and then was re-detained was entitled to a bond hearing under § 1226(a)); *Qasemi v. Francis*, No. 25-CV-10029, 2025 WL 3654098, at *11–12 (S.D.N.Y. Dec. 17, 2025) (stating that a noncitizen whose parole terminates "is not reverted by operation of law to status as an arriving alien" and that his re-detention "must be conducted under the discretionary framework of Section 1226(a)"). *But see*, *e.g.*, *Chirinos Chirinos v. Tindell*, No. 3:25-CV-789-CHB, 2026 WL 926941, at *12–13 (W.D. Ky. Apr. 6, 2026); *Walang v. Acting Field Off. Dir.*, No. 1:26-cv-151, Doc. 8 at PageID 175 (S.D. Ohio Mar. 5, 2026).

The Court holds that Bustamante Cabrera is entitled to a constitutionally-adequate bond hearing under § 1226(a). He did not receive a constitutionally-adequate bond hearing on August 27, 2026 because the Immigration Judge simply found that he lacked jurisdiction without considering the merits of the bond request. (Doc. 3-11 at PageID 206.)

**B. Due Process**

Bustamante Cabrera also alleges that the failure to provide him with a constitutionally-adequate bond hearing violates his due process rights. Noncitizens who "have passed through our gates and are . . . protected by the Fifth Amendment's Due Process Clause." *Lopez-Campos*, 175 F.4th at 733 (internal quotation and citation omitted). Federal Respondents, nonetheless, argue that under Supreme Court precedent a noncitizen has "only those [due process] rights

regarding admission that Congress has provided by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–140 (2020). The Court has held that Bustamante Cabrera's detention is governed by 8 U.S.C. § 1226(a), under which bond hearings are provided, and not by 8 U.S.C. § 1225(b)(2)(A) under which detention is mandatory.[4]

"Non-punitive detention in the immigration context violates the Due Process Clause, absent adequate procedural protections or a special justification outweighing a petitioner's liberty interest." *Ortiz Gutierrez v. Raycraft*, 821 F.Supp.3d 934, 940 (S.D. Ohio 2026) (cleaned up). As such, "detention [under § 1226(a)] is discretionary and constitutionally constrained by due process." *Id*. (citation omitted). The Court finds that Federal Respondents are violating Bustamante Cabrera's due process rights by enforcing mandatory detention under § 1225(b). *See Munoz Soto*, 834 F.Supp.3d at 771–772; *Montiel*, 2026 WL 32076, at *3; *Salgado Bustos v. Raycraft*, No. 25-13202, 2025 WL 3022294, at *6–7 (E.D. Mich. Oct. 29, 2025) (holding noncitizens who have been paroled into the United States are entitled to a bond hearing under the Due Process Clause). The Court turns then to the matter of what process is due to Bustamante Cabrera.

The three-part balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), strongly supports Bustamante Cabrera's due process right to a bond hearing. As to the first factor—the private interest affected—Bustamante Cabrera's Fifth Amendment right to be free from deprivation of liberty is at stake. He has a significant liberty interest in avoiding detention,

[4] Respondents place too much reliance on dicta from *Thuraissigiam*. The Supreme Court stated in dicta that "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139 (internal quotations and citations omitted). But the issue in *Thuraissigiam* was whether 8 U.S.C. § 1252(e)(2) violated a noncitizen's due process rights by limiting judicial review of credible fear determinations. *Id.* at 140. The Supreme Court in *Thuraissigiam* also stated in dicta that "aliens who have established connections in this country have due process rights in deportation proceedings." *Id.* at 107. *Thuraissigiam* is not dispositive on the due process issue before the Court.

and especially detention indistinguishable from criminal incarceration. Bustamante Cabrera has a pending request for asylum, and Federal Respondents created a liberty interest when they granted him parole. *See Azalyar v. Raycraft*, 814 F.Supp.3d 926, 933 (S.D. Ohio 2026). His detention without a bond hearing impinges on his liberty. As to the second factor, an individualized bond redetermination hearing provides a mechanism for the Immigration Judge to determine whether Bustamante Cabrera poses a flight risk or danger to the community. That reduces the risk of erroneous deprivation of his right not to be deprived of liberty without due process. *See, e.g.*, *Lopez-Campos* , 797 F.Supp.3d 771, 785 (E.D. Mich. 2025), *aff'd* 175 F.4th 713 (2026). Finally, the last factor is neutral. The Government has a legitimate interest in ensuring noncitizens' appearance at removal proceedings and prevent harm to the community, but nothing in the record before this Court suggests that detention of Bustamante Cabrera is necessary to further the Government's interest. The Government has not shown that a due process-compliant individualized bond hearing would impose undue administrative or financial costs.

In sum, the *Mathews* factors favor Bustamante Cabrera and compel the holding that mandatory detention without a constitutionally-adequate bond hearing violates his Fifth Amendment right to due process. *See Mulet-Zaldivar*, 2026 WL 1911462, at *1–3; *Patel v. Tindall*, 810 F.Supp.3d 824, 833 (W.D. Ky. 2025) ("Additionally, when ICE has initial discretion to detain or release a noncitizen pending removal proceedings, after the initial release, the petitioner has a protected liberty interest in remaining out of custody.") (internal quotation and citation omitted); *Salgado Bustos*, 2025 WL 3022294, at *7.

## III. CONCLUSION

The Court has determined that Bustamante Cabrera did not receive a constitutionally-

adequate bond hearing on May 26, 2026. Accordingly, the Habeas Petition (Doc. 13) is **GRANTED**. The Butler County Sheriff's Motion to Dismiss (Doc. 15) is **DENIED AS MOOT**.

The Court **ORDERS** that within seven days of the date of this Order Federal Respondents shall either (1) provide Bustamante Cabrera with a **due process compliant, individualized bond redetermination hearing** before an Immigration Judge; or (2) release Bustamante Cabrera from custody. If Federal Respondents choose to provide a bond hearing in lieu of releasing Bustamante Cabrera from custody, then:

> (1) Federal Respondents shall provide a copy of this Order to the Immigration Judge before any hearing;
>
> (2) the Immigration Judge shall have jurisdiction over the matter and be empowered to grant bond;
>
> (3) the Immigration Judge **shall affirm and enforce** that Federal Respondents bear the burden of persuasion to justify Bustamante Cabrera's continued detention and to adduce clear and convincing evidence that Bustamante Cabrera is a danger to the community or a risk of flight. *See Black v. Decker*, 103 F.4th 133, 155 (2d Cir. 2024) (setting forth evidentiary standard), *cert. granted*, *Genalo v. Black*, No. 25-886, 2026 WL 1718025 (U.S. June 15, 2026); *Soto-Medina v. Lynch*, 817 F.Supp.3d 612, 629 (W.D. Mich. 2026) (same); *Azalyar v. Raycraft*, 814 F.Supp.3d 926, 935 (S.D. Ohio 2026) (same); and
>
> (4) the Immigration Judge **shall consider** whether less restrictive alternatives to detention can reasonably address Federal Respondents' interest, as well as Bustamante Cabrera's "ability to pay when setting any bond amount." *M.P.L. v. Arteta*, No. 25-CV-5307, 2025 WL 2938993, at *6 (S.D.N.Y. Oct. 16, 2025); *see also Black*, 103 F.4th at 158.

**IT IS SO ORDERED.**

BY THE COURT:

S/Susan J. Dlott
Susan J. Dlott
United States District Judge